`

 

IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-07-00105-CR

No. 10-07-00106-CR

 

Brunshae Steadman,

                                                                                    Appellant

 v.

 

The State of Texas,

                                                                                    Appellee

 

 

 



From the 52nd District Court

Coryell County, Texas

Trial Court Nos. 18,512 and 18,569

 



Opinion



 








            A jury convicted Brunshae Steadman in
two cases of aggravated sexual assault, and the trial court sentenced him to
twenty years in prison in both.  On appeal, Steadman challenges: (1) the legal
and factual sufficiency of the evidence (two issues); and (2) the denial of his
written objection to an instruction in the jury charge (two issues).  We affirm
in part and reverse and remand in part.

 

 

Factual Background

            Steadman was the boyfriend of L.N.’s
mother, Edwina.  He often babysat L.N. and her two brothers when Edwina was out
of the home.  L.N. made an outcry of sexual abuse against Steadman to her
grandmother, Mary.  L.N. was four years old at this time.

Mary discovered a “green and slimy” discharge in
L.N.’s underwear and asked L.N. whether Steadman had touched her.  L.N. stated
that Steadman “laid down on top of me and played with me,” touched her “tutu,”
meaning her vaginal area, and touched her with his penis “[d]own in her
stride,” also meaning her vaginal area.  She did not accuse Steadman of
penetrating her with either his finger or his penis.  L.N. had previously
accused another man of “put[ting] his finger in her middle spot with her
clothes on” and touching her without her clothes on, but the police were unable
to locate the man.  However, neither Edwina nor Mary had previously observed
L.N. experience green discharge.  Mary did recall a previous incident where
L.N. complained of her “tutu” hurting and bleeding.

Edwina took L.N. to the emergency room where she
was examined by Annette Wendeborn and Dr. Barry Phillips.  She told Wendeborn
and Phillips that L.N. had a “greenish discharge,” itching, and redness. 
According to Wendeborn, these symptoms indicate a sexually transmitted disease
and it is uncommon to see that type of discharge in a child L.N.’s age.  Some sexual
contact had to be involved.  Dr. Phillips testified that L.N.’s exam revealed a
green watery discharge, “mild reddish irritation,” and no “evidence of trauma.” 
He does not “routinely” see discharge from a child who has never had a
menstrual cycle or sexual intercourse.  Other than a sexually transmitted
disease, L.N. could have had any number of bacterial infections and the 
irritation could have been caused by using the restroom, bathing, or
scratching.  Wendeborn and Phillips took a culture to determine the type of
infection involved.

Dr. Arundhati Rao’s lab tested L.N.’s specimen,
which tested positive for gonorrhea.  The test was performed twice.  Dr. Darren
Hamm, L.N.’s primary care physician, gave L.N. an injection to treat the
infection.  Although he did not make his own diagnosis of gonorrhea, he
testified that the infection in a child indicates “sexual trauma, sexual
abuse.”  Deborah Kleypas, sexual assault nurse examiner, and Dr. Pamela Greene
subsequently performed a sexual assault examination of L.N., during which L.N.
had to be sedated.  During the exam, Kleypas and Greene observed V-shaped
notches in L.N.’s hymen and posterior fourchette.  According to Kleypas, these
findings are not “definitive proof of sexual abuse,” but could have resulted
from abuse and were consistent with the abuse that L.N. described.  The notches
were the only signs of penetration.  Pointing to specific parts on a body
diagram, L.N. told Kleypas that Steadman put his penis on her bottom and on her
“tutu.”

Deputy Armando Paniagua spoke with Steadman who
denied either having gonorrhea or infecting L.N. with gonorrhea.  Steadman
consented, in writing, to be tested for gonorrhea.  Kleypas examined Steadman
and obtained specimens for testing.  She also obtained a specimen from the
husband of a woman who had babysat L.N.  Steadman told Edwina that he had taken
a test for gonorrhea.  Edwina testified that Steadman asked what would happen
if he tested positive, seemed “scared,” and did not want to go to jail for
something he did not do.  He apologized to Edwina for whatever he had done.  Edwina
found this apology unusual, as Steadman had never apologized in a similar
manner.

Dr. Rao’s lab tested Steadman’s urine specimen and
urethral swab, both of which tested positive for gonorrhea.  Like L.N.’s test,
Steadman’s test was also repeated.  The other man’s specimen tested negative. 
Dr. Rao testified that there was no way the samples could have been switched.

Paniagua told Steadman that the test was negative
and Steadman agreed to come to the Sheriff’s office to discuss it.  Before
taking Steadman’s written statement, Paniagua informed Steadman that he
actually tested positive.  Steadman appeared upset and surprised, began crying,
and denied having an infection.  He told Paniagua that he touched L.N. by
rubbing her sexual organ with his finger and penetrated her with his finger
under her clothing.  In his statement, Steadman wrote, “I was playing with my
self and got cum on my finger, I was drunk at the time I touch [L.N.] with my hand,
I never did do anything other than that.”  Steadman used gestures to show
Paniagua what he did to L.N.  After writing his statement, Steadman denied
doing anything to L.N. and stopped the interview.

Edwina was unaware that Steadman had gonorrhea and
told Paniagua that she did not believe Steadman had gonorrhea.  Even after
discovering that Steadman was infected, she was surprised and did not believe
it because she had never observed any symptoms.  Edwina previously had
gonorrhea when pregnant with L.N.  Greene testified that a baby could contract
gonorrhea during child birth, but the infection would develop in the child’s
eyes.

Kleypas testified that any object that passes the
labia majora constitutes “penetrating the female sexual organ” and does not “necessarily
have to go in the vagina to be penetration.”  She further testified that “full
penetration” by the male sexual organ is difficult in a child L.N.’s age. 
There was no evidence of “full penetration” in L.N.’s case.  It is common not
to find any injuries to the female sexual organ as a result of sexual assault. 
She explained that gonorrhea is normally transmitted via genital to genital
contact, but penetration is not necessary.  She could not definitively state
that L.N. was sexually abused and, other than the lab results, her examination
of Steadman did not reveal that he had gonorrhea.

Dr. Greene testified that gonorrhea can be found
on the vagina even if the male sexual organ rubs on the outside of the vagina. 
Gonorrhea can be transmitted by the male sexual organ touching a child’s sexual
organ.  Greene was not one hundred percent certain that gonorrhea could be
transmitted by touching a finger with semen on it to the child’s sexual organ;
it would have to be a “large inoculum” and be quickly placed on the child’s
sexual organ.  A child is more susceptible to infection; adults may not have
symptoms, but a child usually will.  It is abnormal for a four-year-old child
to have a discharge; thus, if gonorrhea is detected, the child has been sexually
abused.  A normal exam is common because a child’s vaginal opening is too small
for full penile penetration.

Dr. Robert Fader testified that adults can have
gonorrhea without showing any symptoms.  It is unlikely that children will not
exhibit symptoms.  Gonorrhea could be transmitted where a male has semen on his
finger and then touches the female sexual organ or rubs the outside of the
vagina.  Gonorrhea is not always the result of sexual assault.  Steadman’s and
L.N.’s specimens were sent to the Center for Disease Control for testing that
could potentially link the two cases of gonorrhea.  However, the CDC never
received L.N.’s specimen.  Had the test been performed it would have been
definitive.  Even had L.N.’s sample been received, the CDC had indicated that
it might not be able to extract enough DNA to properly perform the test.

Edwina testified that L.N. struggles to discuss
the offense, often changing the subject, providing excuses, or expressing
fear.  According to Mary, L.N. is now moody and sometimes reacts in anger. 
L.N.’s counselor testified that L.N. exhibits signs of “agitation” and
“avoidance” when discussing the offense.

LEGAL AND FACTUAL SUFFICIENCY

            In cause number 10-07-00105-CR,
Steadman’s first and second issues challenge the sufficiency of the evidence to
support aggravated assault by his sexual organ.  In cause number
10-07-00106-CR, Steadman’s first and second issues challenge the sufficiency of
the evidence to support aggravated assault by his finger.

Standards of Review

Under legal sufficiency review, we determine whether, after
viewing all the evidence in the light most favorable to the verdict, any
rational trier of fact could have found the essential elements of the offense
beyond a reasonable doubt.  Curry
v. State, 30
S.W.3d 394, 406 (Tex. Crim. App. 2000) (citing Jackson
v. Virginia, 443
U.S. 307, 318-19, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979)). 
We do not resolve any conflict of fact or assign credibility to the witnesses,
as this was the function of the trier of fact.  See Dewberry
v. State, 4
S.W.3d 735, 740 (Tex. Crim. App. 1999); see also Adelman
v. State, 828
S.W.2d 418, 421 (Tex. Crim. App. 1992); Matson
v. State, 819
S.W.2d 839, 843 (Tex. Crim. App. 1991).  Inconsistencies in the
evidence are resolved in favor of the verdict.  Curry, 30 S.W.3d at 406; Matson, 819 S.W.2d at 843.

Under factual sufficiency review, we ask whether a
neutral review of all the evidence demonstrates that the proof of guilt is so
weak or that conflicting evidence is so strong as to render the jury’s
verdict clearly wrong and manifestly unjust.  Watson v. State, 204 S.W.3d 404, 414-15 (Tex.
Crim. App. 2006); Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim.
App. 2000).  We review the evidence weighed by the jury that tends
to prove the existence of the elemental fact in dispute and compare it with the
evidence that tends to disprove that fact.  Johnson, 23 S.W.3d at 7.  We
do not indulge in inferences or confine our view to evidence favoring one
side.  Rather, we look at all the evidence on both sides and then make a
predominantly intuitive judgment.  Id.

Digital Penetration

Steadman contends that the evidence is legally and
factually insufficient because L.N. did not testify at trial; thus, his
extrajudicial confession that he digitally penetrated L.N.’s sexual organ is
not supported by corroborating evidence.

L.N. told Mary that Steadman “laid down on top of
me and played with me” and touched her “tutu.”  When defense counsel asked
Kleypas what signs of penetration she observed during her examination of L.N.,
Kleypas identified the V-shaped notches in L.N.’s hymen and posterior forchette. 
L.N. also suffered from green discharge and irritation.  She was diagnosed with
gonorrhea, the same infection for which Steadman tested positive.  Witnesses testified that the presence of a
sexually transmitted disease in a small child is indicative of sexual abuse. 
It is possible for the infection to be transmitted via digital penetration.

Under the corpus delicti rule, there must
be “some evidence [] outside of the extra-judicial confession which, considered
alone or in connection with the confession, shows that the crime actually
occurred.”  Salazar v. State, 86 S.W.3d 640, 645 (Tex. Crim. App. 2002).  The fact that L.N. did not expressly state that
Steadman penetrated her with his finger is not dispositive.  See Villalon v. State, 791 S.W.2d 130, 133 (Tex. Crim.
App. 1990) (a complainant is not required to testify to actual
penetration).  Neither does the fact that L.N. accused Steadman of touching
her vaginal area negate a finding of penetration, as a child victim’s description
of the offense need not be precise, and she is not expected to express herself
at the same level of sophistication as an adult.  See id. at 134.  The State “produc[ed]
some independent evidence that someone had sexual contact with [L.N.’s] private
part and that the act was performed with criminal intent.”  Salazar,
86 S.W.3d at 645.

The jury could reasonably conclude, beyond a
reasonable doubt, that Steadman committed the offense of aggravated sexual
assault by penetrating L.N.’s sexual organ with his finger.  See Curry, 30 S.W.3d at 406.  The
proof of guilt is not so weak nor the conflicting evidence so strong as to
render the jury’s verdict clearly wrong and manifestly unjust.  See Watson, 204 S.W.3d at 414-15;
see also Johnson, 23 S.W.3d at 11.

Penetration by Sexual Organ

Steadman contends that the evidence is legally
insufficient because a variance exists between the indictment and the evidence
presented at trial; specifically, there is no evidence that he penetrated
L.N.’s sexual organ with his sexual organ.  He further contends that the
evidence is factually insufficient to support a finding of pentration by his
sexual organ.  

It is not necessary that the evidence establish
full penetration of L.N.’s sexual organ by Steadman’s sexual organ.  The State may prove penetration by circumstantial
evidence.  See Villalon, 791 S.W.2d at 133.  Evidence
of the slightest penetration is sufficient to uphold a conviction, so long as
it has been shown beyond a reasonable doubt.  See Luna v. State, 515 S.W.2d 271, 273 (Tex. Crim.
App. 1974).  Penetration may be established by contact with the
female sexual organ that reasonable people could regard “as more intrusive than
contact with [the] outer vaginal lips.”  Vernon v. State, 841 S.W.2d 407, 409 (Tex. Crim.
App. 1992).

L.N. told Mary that Steadman touched her with his penis
“[d]own in her stride” and “laid down on top of me and played with me,” and
told Kleypas that Steadman put his penis on her “tutu.”  L.N. suffered from a
green discharge, irritation, and injuries to her hymen and posterior forchette. 
Steadman and L.N. both tested positive for gonorrhea, which can be transmitted by
penile penetration.  Because L.N.’s account need not be precise, the jury could
find penetration by sexual organ even though L.N. accused Steadman of placing
his penis on her vaginal area.  See Villalon, 791 S.W.2d at 134. 
The evidence could lead a reasonable jury to conclude that the contact between
Steadman’s sexual organ and L.N.’s sexual organ was “more intrusive than
contact with her outer vaginal lips.”  Vernon, 841 S.W.2d at 409.  The
evidence is legally sufficient to establish penetration by sexual organ.  

However, the evidence is not factually sufficient. 
The record indicates that gonorrhea can also be transmitted by the male sexual
organ merely touching the outside of the female sexual organ, without the male
sexual organ passing beyond the labia majora.  A neutral review of the evidence
establishes a touching between Steadman’s sexual organ and L.N.’s sexual
organ, but does not establish an intrusion beyond the vaginal lips.  Accordingly,
we find the proof of guilt to be so weak as to render the jury’s verdict
clearly wrong and manifestly unjust.  See Watson, 204 S.W.3d at 414-15;
see also Johnson, 23 S.W.3d at 11.  We
reverse Steadman’s conviction in cause number 10-07-00105-CR for aggravated sexual
assault with his sexual organ and remand for a new trial on this count.  Issues
one and two are overruled in part and sustained in part.

OBJECTIONS TO THE CHARGE

            Steadman’s third and fourth issues are
identical in both appeals.  Issue three challenges the trial court’s overruling
of his written objection to an instruction in the jury charge.  In issue four, Steadman
contends that his constitutional rights were violated by inclusion of the
instruction in the charge.

 In his written objections to the jury charge, Steadman objected to
the following instruction on grounds that it failed to give him “the benefit of
reasonable doubt by attempting to define ‘reasonable doubt’ by stating what
reasonable doubt is not”:

It is not required that the prosecution prove
guilt beyond all possible doubt, it is required that the prosecution’s proof
excludes all “reasonable doubt” concerning the defendant’s guilt.

 

This is paragraph three of the Geesa
instructions, which are no longer required.  See Geesa v. State, 820 S.W.2d 154, 162 (Tex. Crim. App. 1991); see also Paulson v.
State, 28 S.W.3d 570, 573 (Tex. Crim. App. 2000) (overruling Geesa
to the extent it “requires trial
courts to instruct juries on the definition of ‘beyond a reasonable doubt’”).  The
Court of Criminal Appeals has determined that inclusion of this paragraph
in a jury charge is not an abuse of discretion, although the better practice is
to exclude it.[1]  See
Woods v. State, 152 S.W.3d 105, 115 (Tex. Crim. App. 2004); see also Battaglia v. State, No.
05-06-00798-CR, 2007 Tex. App. Lexis
9083, at *6-7 (Tex. App.—Dallas Nov. 19, 2007, no pet.) (not designated for
publication) (rejecting appellant’s argument that instruction was improperly included because it
“amounts to a definition of reasonable doubt because it states what reasonable doubt ‘is not’”);
Frank v. State, 183 S.W.3d 63, 79 (Tex. App.—Fort Worth 2005,
pet. ref’d) (inclusion of paragraph three not improper).  Inclusion of the complained of paragraph was not improper.  See Woods,
152 S.W.3d at 115; see also Battaglia,
2007 Tex. App. Lexis 9083, at *6-7; Frank, 183 S.W.3d at 79.  We
overrule issue three.

Steadman next argues that the inclusion of this
paragraph violates the Fifth and Fourteenth Amendments of the United States
Constitution and Article I, sections 13 and 19 of the Texas Constitution.

Although Woods does not address the
constitutional issues raised here, the Court of Criminal Appeals found the
inclusion of Geesa paragraph three not improper.  See Woods, 152 S.W.3d at 115.  Texas courts have similarly
held in a constitutional context.  See
Chiodo v. State, No.
2-06-096-CR, 2007 Tex. App. Lexis
5261, at *4-8 (Tex. App.—Fort Worth July 5, 2007, pet. ref’d) (not designated
for publication) (due process); see also Jones v. State, No. 14-03-00650-CR, 2005 Tex. App. Lexis 1850, at *23-25 (Tex. App.—Houston [14th Dist.]
March 10, 2005, pet. ref’d) (not designated for publication) (due process).  Moreover, Paulson specifically
criticized paragraphs four and five of the Geesa
instructions, not paragraph three.  See Paulson,
28 S.W.3d at 572; see also Woods, 152 S.W.3d at 115.  In light of
Woods, we decline to find the inclusion of Geesa paragraph three
to be unconstitutional.  We overrule issue four.

Conclusion

            We reverse Steadman’s conviction in cause
number 10-07-00105-CR for aggravated sexual assault by sexual organ and remand
that cause to the trial court for further proceedings consistent with this
opinion.  We affirm the judgment in cause number 10-07-00106-CR.

 

  




 

 

 

FELIPE REYNA

Justice

 

Before Chief Justice
Gray,

Justice
Vance, and

Justice
Reyna

(Chief
Justice Gray concurring and dissenting with a note)* 

Judgment reversed and
remanded in cause number 10-07-00105-CR,

Judgment affirmed in
cause number 10-07-00106-CR,

Opinion delivered and filed
July 2, 2008

Publish

[CR25]

 

*(Note
by Chief Justice Gray: “Chief Justice
Gray concurs in the affirmance of the judgment of conviction in cause number
10-07-00106-CR and dissents to the reversal of the conviction in
10-07-00105-CR, noting that he would also affirm the conviction in
10-07-00105-CR.  I do not find the jury’s verdict clearly wrong and manifestly
unjust.  A separate opinion will not issue.”)









[1]               Before the Court of Criminal
Appeals delivered its opinion in Woods, we determined that the inclusion
of paragraph three in the jury charge, absent the agreement of both parties,
was improper.  See Phillips
v. State, 72 S.W.3d 719, 720 (Tex. App.—Waco 2002, no pet.).  Our decision in Phillips has been implicitly
overruled by Woods.